**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RUBEN NUNEZ-HERNANDEZ,** | § | |
| **TDCJ No. 02126192,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **W-21-CV-189-ADA** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Ruben Nunez-Hernandez's pro se Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 14), Respondent's Response (ECF No. 11), and Petitioner's Rebuttal (ECF No. 13). Petitioner has also filed a Motion for Evidentiary Hearing. (ECF No. 18.) Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner's motion is also denied.

## I.  Background

In December 2015, Petitioner was charged by indictment with one count of continuous sexual abuse of a young child and one count of indecency with a child by contact. (ECF No. 12-22 at 49-51.) On January 20, 2017, a jury convicted Petitioner of both counts, and sentenced him to ninety-nine years imprisonment on the continuous

1

sexual abuse count and twenty years imprisonment and a $10,000 fine on the indecency count. *State v. Nunez-Hernandez*, No. 2015-2469-C1 (19th Dist. Ct., McLennan Cnty., Tex. Jan. 20, 2017). (ECF No. 12-22 at 85-88.) The following is a summary of the factual allegations against Petitioner.[1]

The complainant lived with her mother and Petitioner, who she considered her stepfather. The complainant testified that Petitioner first sexually assaulted her in July 2014, when she was around ten years old, and he continued to do so regularly until around September 2015. After the complainant reported the sexual abuse to police, Officer Jeremy Bost and another officer conducted a search of the house that Petitioner shared with the complainant and her mother. The officers recovered bedsheets from the complainant's bed. A forensic scientist from found sperm on the sheets and sent a sample for DNA testing, which determined that the sperm sample on the sheets was over one quintillion times more likely to have come from Petitioner than from a random individual.

Petitioner testified the sexual abuse never occurred and alleged the complainant's mother took his sperm and placed it on the complainant's sheets because she was angry about a relationship he had had with another woman. (ECF No. 11 at 4-5.)

Petitioner's conviction was affirmed on appeal. *Nunez-Hernandez v. State*, No. 10-17-00039-CR, 2019 WL 2557455 (Tex. Ct. App.—Waco Jun. 19, 2019, pet. ref'd). On August 21, 2019, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Nunez-Hernandez v. State*, No. PD-0744-19 (Tex. Crim.

---

[1] This is a shortened summary of the factual background provided by Respondent, to which Petitioner did not object.

App. Aug. 21, 2019). Petitioner did not file a petition for a writ of certiorari to the United

States Supreme Court. (ECF No. 14 at 3.)

On June 15, 2020, Petitioner filed a pro se state habeas corpus application, listing

the following three grounds of relief:

1. Petitioner's trial counsel provided ineffective assistance by failing to interview the state witnesses, including Officer Bost and a different officer known only as the "other officer," and by failing to conduct an independent investigation in order to gain access to these two officers' audio recordings, which would have shown Petitioner did not consent to have his home searched.

2. Petitioner's Fourteenth Amendment rights were violated when the State withheld the other police officer's testimony regarding whether Petitioner consented to have his home searched and withheld audio recordings that would have contradicted Officer Bost's testimony.

3. Appellate counsel provided ineffective assistance for failing to raise the issues of the other officer's testimony as it related to Petitioner's consent to have his house searched and the accuracy of the audio recordings.

(ECF No. 11-22 at 2-34.) The state habeas court—which was the same as the trial court—

recommending denying Petitioner's application. (*Id.* at 2.) On December 2, 2020, the

TCCA denied Petitioner's application without written order. *Ex parte Nunez-Hernandez*,

No. WR-91,533-01 (Tex. Crim. App. Dec. 2, 2020). (ECF No. 12-21.)

On February 1, 2021, Petitioner filed a federal habeas petition (ECF No. 3), and

then filed an amended petition on October 6, 2021, listing the following grounds of relief:

1. Trial counsel provided ineffective assistance when counsel failed to interview Officer Bost and the other officer in order to gain access to exculpatory audio[2] recordings.

---

[2] Petitioner occasionally references video recordings in his petition. However, the only video recordings mentioned in the record related to Officer Bost's recording of the complainant's initial police interview. Because Petitioner's petition focuses on the alleged illegality of the search of his residence and makes no claims regarding the complainant's outcry, the Court will disregard references to video recordings.

3

2. The State violated *Brady v. Maryland* by withholding the other officer's testimony and audio recordings made during the search of his residence.

3. The trial court abused its discretion when it found that Petitioner consented to the search of his residence.

4. Appellate counsel provided ineffective assistance when counsel failed to argue on appeal that there was no warrant to search Petitioner's residence and that the State had withheld the exculpatory audio recordings.

(ECF No. 15.) On May 11, 2021, Respondent filed its response (ECF No. 11) to which Petitioner filed a rebuttal on June 1, 2021 (ECF No. 15). Petition filed a Motion for Evidentiary Hearing on November 4, 2021. (ECF No. 18.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly

4

established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

<u>1. Ineffective Assistance of Counsel</u>

 *a. Ineffective Assistance of Trial Counsel.* In his first claim for relief, Petitioner argues his trial counsel provided ineffective assistance when he failed to interview Officer Bost and the other officer who conducted the search of Petitioner's residence and failed to gain access to the exculpatory audio recordings. The Sixth Amendment to the United

States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

6

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

Petitioner alleges that his trial counsel provided ineffective assistance when he failed to interview Officer Bost and the other officer who searched Petitioner's residence after the complainant contacted police. Petitioner alleges the other officer would have contradicted Officer Bost's testimony that Petitioner consented to the search. Petitioner also argues his trial counsel provided ineffective assistance by not retrieving the audio recordings of the search, which he alleges would show he did not consent to the search.

At trial, Officer Bost testified that, after the complainant made her outcry at the McGregor Police Department, Officer Bost and another officer went to the complainant's residence to make contact with the Petitioner. Petitioner met them in the driveway and identified himself. Bost noted that there was a language barrier, although he testified that Petitioner stated he understood English but could not speak much of it. Bost further testified that Petitioner gave his consent to have the residence searched, and at no point did he withdraw that consent. In the house, Bost and the other officer retrieved the

7

complainant's bedsheets. On cross-examination, Bost testified that, after Petitioner walked up the driveway and identified himself to the officers, Petitioner was detained and placed in handcuffs for officer safety. (ECF No. 12-8 at 86-114.)

Petitioner testified that, when he reached his house the day of the complainant's outcry, he saw three police officers; one asked him for his name and then arrested him. Petitioner further testified that he did not know why the police officers were there; that he did not feel free to leave; that the police officers never asked for consent to search the house; and that he asked the police officer if he had a search warrant but the officer did not respond. At one point during Petitioner's direct testimony, his counsel asked him a question—"So do you think that she did that to get you in trouble?"—and Petitioner responded "yes" before the interpreter could translate the question. (ECF No. 12-9 at 171-72, 181.)

After the defense rested, Officer Bost was called back and testified that, after he had put Petitioner in handcuffs, Petitioner was not free to leave but that if Petitioner had withdrawn his consent for the search, Bost would have removed Petitioner from the residence and obtained a search warrant. Bost further testified he was wearing a body mic during the search but the recording was not with the case file and Bost guessed it had been lost by police administration. On redirect, Bost testified that the recording might have been lost after he left the McGregor Police Department, and that he believed having the recording would have been helpful to his testimony. (ECF No. 12-9 at 197-202.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at

minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691.

Petitioner's claims his trial counsel's performance was constitutionally deficient because he failed to interview Bost and the other officer, and alleges the other officer's testimony, along with the audio recording of the search, would have impeached Bost's account by showing Petitioner did not consent to the search of his residence. But Petitioner provides no evidence to support these allegations, and there is nothing in the record that suggests the other officer's testimony would have differed from Bost's. Further, Bost testified that the audio recording of the search was lost through no action of his own, but that he believed it would support his testimony that Petitioner consented to the search. Conclusory allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007). Further, in one instance, Petitioner answered his counsel's question at trial without using an interpreter, which tends to support Bost's testimony that Petitioner could understand English but not speak it. Accordingly, the state habeas court's application of *Strickland* to this claim is not unreasonable, and it is denied.

*b. Ineffective Assistance of Appellate Counsel.* In Petitioner's sixth claim for relief, he argues his appellate counsel provided ineffective assistance when counsel failed to

argue on appeal that the search was illegal and that the State withheld the audio recordings.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) Ms. Jernigan's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

On direct appeal, Petitioner's appellate counsel argued that, because Petitioner had not voluntarily consented to the search, the trial court had abused its discretion in denying Petitioner's motion to suppress. The court of appeals rejected this claim, holding that "[t]he record supports the trial court's implied finding that Nunez-Hernandez voluntarily consented to a search of his residence." *Nunez-Hernandez,* 2019 WL 2557455,

10

at *4. The record therefore shows that Petitioner's appellate counsel did raise the issue of the house search on appeal, but the claim was overruled. To the extent Petitioner is arguing counsel should have raised claims regarding the other officer's testimony and the audio recordings, as discussed above, there is no evidence in the record showing that either of these claims are nonfrivolous and would have been meritorious on appeal. Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and it is denied.

2. The *Brady* claim

In his second claim, Petitioner argues that the State violated his Fourteenth Amendment rights when it withheld from the defense the testimony from the other officer and the audio recordings of the search.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

As noted above, there is no evidence to support Petitioner's claim that the testimony of the other officer would have been beneficial to his defense, and Officer Bost testified that the audio recording was lost. Petitioner's allegations to the contrary fail to rebut the state habeas court's findings with clear and convincing evidence that that State

11

did not withhold evidence that was favorable to the defense. *See* 28 U.S.C. § 2254(e)(1) (a state court's factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence"). Accordingly, this claim is denied.

3. Trial Court Error

In Petitioner's final claim for relief, he argues the trial court abused its discretion when it admitted evidence, i.e. the complainant's bed sheets, from the allegedly unconstitutional search of Petitioner's residence.

Relief on Petitioner's Fourth Amendment claim is barred pursuant to the *Stone v. Powell*, which holds that, if the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief may not be granted to a state prisoner on that claim. 428 U.S. 465, 494 (1976). The *Stone* bar applies to "to all claims arising under the Fourth Amendment," including challenges to the seizure of evidence, *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) and even to claims "where the petitioner did not avail himself of the litigating opportunity provided by the state courts" *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012).

Petitioner litigated his claims in the state court. Further, he makes no argument that his state court litigation was circumscribed in any way and does not allege that "the processes provided by the state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Consequently, this claim is barred from federal habeas review.

4. Motion for Evidentiary Hearing

Finally, Petitioner moves for an evidentiary hearing. Habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court). When, as in this case, a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during a state habeas corpus proceeding, further factual development in federal court is effectively precluded. *See Pinholster*, 563 U.S. at 181-88 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by § 2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Likewise, where a federal petitioner's claims lack merit on their face, further factual development is not necessitated. *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development,

13

especially when confronted with claims foreclosed by applicable legal authority). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro*, 550 U.S.465, 468 (2007)). As discussed above, Petitioner's allegations lack merit and further factual development is unwarranted. This motion is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 14) and Motion for Evidentiary Hearing (ECF No. 18) are **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

SIGNED this 8th day of November, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE